UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BONITA ROCHELLE FERGUSON,

          Plaintiff,

   -vs-

CAROLYN COLVIN, Commissioner of
Social Security,

          Defendant.

_____

**DECISION and ORDER
No. 1:12-CV-0033(MAT)**

     Plaintiff Bonita Rochelle Ferguson ("Plaintiff"), represented by counsel, brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**II.  Procedural History**

     Plaintiff protectively filed an application for DIB on April 21, 2009, alleging an onset date of February 2, 2008, which later was amended to March 18, 2009. After the application was

---

[1]

    Carolyn W. Colvin has replaced Michael J. Astrue as the Commissioner of Social Security. She therefore is automatically substituted as the defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

denied, Plaintiff appeared with counsel for a hearing before Administrative Law Judge William M. Weir ("the ALJ") on November 9, 2010. T.19-58.[2] The ALJ issued an unfavorable decision on March 25, 2011. T.7-18. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This timely action filed.

### III. Summary of the Administrative Record

#### A. Vocational and Non-Medical Evidence

Plaintiff was 43-years-old on the amended onset date, and had a high school education. Her past relevant work, beginning July 1993, was as a phlebotomist. This job entailed drawing blood, entering insurance information into the computer, and maintaining stock supplies, which sometimes required lifting objects weighing 50 pounds. T.134-35. On a typical day at work, she would walk for about 6½ hours and sit for about 2 hours. She stopped working as a phlebotomist on March 18, 2009, due to her lower back pain. T.118.

#### B. Medical Evidence Prior to the Onset Date

On February 5, 2008, Plaintiff presented to Dr. Eugene Gosy of Gosy & Associates Pain Treatment and Neurology for evaluation of lumbar pain due to facet arthropathy, the residuals of a slip-and-fall injury sustained at work in April 2003. T.212-13. Plaintiff had been experiencing increasing spasms across her low back and was

---

[2]

Citations to "T." refer to pages in the administrative transcript, submitted a separate exhibit by Defendant.

managing her pain with hydrocodone and Baclofen, which caused dysphoria and drowsiness. T.212. Facet blocks had been effective, but were wearing off. Plaintiff was still working full-time. T.212. Lumbar retroflexion deficit was present, but no frank spasm or trigger points were noted. T.212-13. Dr. Gosy diagnosed her with Pain Low Back/Lumbago (724.4)[3] and Backache, Unspecified (724.5). T.213. He assessed her disability level, for purposes of her Workers Compensation claim, at 33%. T.213.

Plaintiff was seen at Lifetime Health on February 21, 2008, by Nurse Practitioner Stacy Dean for exacerbated back pain. T.293. She was unable to perform a single squat and had tenderness over her lower lumbar region and right paraspinal region. She was to follow up with Pain Management and use compress applications and medications as prescribed.

Plaintiff was treated at Lifetime Health on April 1, 2003, for ongoing discomfort in her lower lumbar region with radiating pain into the hips. T.241. She reported that medication was providing moderate relief. Tenderness was noted in the lower lumbar region. T.241. Plaintiff was told to remain out of work for another week; the plan was to return on part-time status with limitations. T.242.

---

[3]

Numbers in parentheses refer to the codes in the International Classification of Diseases ("ICD") for classifying dieases.

Plaintiff returned to see Dr. Gosy on May 29, 2008, with residual aching pain in the right buttock. T.214. She was continued on Hydrocodone and Skelaxin. Her disability remained 33%. T.215.

Dr. Gosy saw Plaintiff in follow-up on August 28, 2008 (T.216-17); November 20, 2008 (T.218-19); and December 29, 2008 (T.221-22). Diagnoses continued to be Pain Low Back/Lumbago and Backache, Unspecified. At the last appointment, straight leg raising ("SLR") and Patrick's test were positive on the right; SLR on the left resulted in pulling in low back and mild pain. T.222. Dr. Gosy requested authorization for aquatic therapy as an adjunct to her current regimen.

### C.   Medical Evidence After the Onset Date

On March 19, 2009, Plaintiff returned to Lifetime Health for mild to moderate back pain, radiating into the pelvis and hips. T.309. Plaintiff's chronic problems were listed as lumbago, major depressive disorder, hypertension, and joint pain (shoulder). T.309. Her primary care physician, Dr. Bhaskara Reddy, ordered an x-ray of her lower back.

When she returned to Lifetime Health on March 24, 2009, Plaintiff continued to have persistent, worsening back pain, at a greater severity than at her previous appointment. T.311. She had spasms, tenderness, and decreased mobility, and was taking Lortab and Flexeril. T.311.

-4-

Plaintiff saw Dr. Gosy on March 30, 2009, complaining of "significant escalation" in her pain (muscle spasms in her lumbar region) over the past 2 weeks. T.234. This had "significant[ly] decreas[ed]" her functional status, and she had been taken out of work for the past 2 weeks. Her primary care physician had prescribed Flexeril, but it was "virtually ineffective." T.234. An x-ray taken on March 19, 2009, revealed degenerative disc disease at L5-S1. T.234, 269 (x-ray report). Straightening of the lordotic curve was noted and thought to be due to muscle spasms. T.235. There was exquisite tenderness of the lower lumbar segments bilaterally, with positive SLR bilaterally and positive Patrick's test bilaterally. T.235-36. Dr. Gosy administered lumbar facet blocks and directed Plaintiff to remain out of work for the rest of the week. T.236. Dr. Gosy assessed lumbago and backache. T.236.

On April 10, 2009, Plaintiff underwent a facet block at L4-5, L5-S1 to treat her facet arthropathy. T.274.

On May 8, 2009, Plaintiff returned to Dr. Gosy for her lumbar pain which worsened significantly following the facet block. Symptoms included muscle spasms and diffuse pain throughout the lumbar territory despite treatment, which only offered "marginal control" of her pain. T.281. She had some fatigue from the Valium and had not yet undergone aquatic therapy. T.282. She requested an updated MRI in light of her progressive pain. Dr. Gosy's diagnoses

-5-

were lumbago (724.4), backache (724.5), and myofascial pain syndrome (729.1). T.283.

On May 24, 2009, Dr. Gosy completed a Lumbar Spine Residual Functional Capacity Questionnaire. T.276-80. He indicated Plaintiff had lumbar facet arthropathy and mechanical low back pain with clinical findings that included paraspinal tenderness of the lumbosacral spine and positive straight leg raising. An MRI of the lumbar spine on March 16, 2006, showed disc bulges at L3-4 and L4-5. Clinically, she had prominent muscle spasms of the lumbosacral spine and fatigue related to the Valium she took to manage her pain/spasms. T.276.

During a typical workday, Dr. Gosy opined that Plaintiff's pain or other symptoms would "occasionally" be severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks. T.277. She could sit for 30 minutes at one time, and for a total of about 6 hours in an 8-hour day; she could stand for 30 minutes at one time and for a total of 2 hours in an 8-hour day. T.277-78. Plaintiff would require periods of walking during an 8-hour day, about every 30 minutes for about 2 minutes at a time. She would need to be able to shift positions at will from sitting, standing or walking. T.278. She could lift 10 pounds occasionally and 20 pounds rarely. She could never twist, stoop (bend), crouch/squat, or climb ladders. T.279. Her symptoms

would produce good days and bad days, but Dr. Gosy stated she was capable of sustaining full-time work. T.279.

An MRI administered on May 28, 2009, revealed concentric bulging discs and annular tears involving the L3-4 and L5-S1 levels, without evidence of lumbar disc herniation; and facet arthropathy involving the lower lumbar spine, without apparent foraminal stenosis. T.284.

On July 9, 2009, Plaintiff returned to Dr. Gosy for further evaluation of her low back pain. Symptoms were unchanged, and she continued to have tenderness of the lower lumbar segments bilaterally. Straight leg raising was positive bilaterally. T.360-61. She was not working as a phlebotomist any longer because her job "significantly escalated her pain state." T.360. Dr. Gosy's diagnoses were lumbago (724.4), backache (724.5), and myofascial pain syndrome (729.1).

On referral by Dr. Gosy, Plaintiff was evaluated by orthopedic specialist William N. Capicotto, M.D., on July 21, 2009.  T.355-58. She rated her constant low back pain at an 8/10 on the pain scale. She experienced pain radiating down the posterior aspect of her right leg to her feet, with intermittent numbness and tingling. Her low back pain was aggravated by prolonged repetitive mechanical activity such as bending, twisting, lifting, turning, pushing or pulling, as well as prolonged sitting, standing and walking. T.355. She was using medication, ice and a TENS unit to relieve pain.

-7-

Dr. Capicotto opined that Plaintiff had a mild, permanent disability in the Workers' Compensation context. He recommended she continue with Dr. Gosy for pain management and stated that surgery was not indicated at this time. T.356-57. His assessment was Sprains & Strains, Lumbar (847.2).

When Plaintiff saw Dr. Gosy on November 17, 2009, she reported continuing pain and difficulty with prolonged walking, standing, and repeated bending. T.416. She was using a cane for ambulatory support.

Plaintiff saw Dr. Gosy on December 29, 2009, with unchanged pain patterns, i.e., constant pain throughout the lumbar territory with intermittent referral to the right lower extremity with numbness. T.381. Her pain was exacerbated by prolonged walking, standing, and repeated bending. Straight leg raising was positive. T.382. Dr. Gosy's assessment remained backache, lumbago, and myofascial pain syndrome. T.382. He stated that Plaintiff he was unable to return to her job as a phlebotomist. T.383.

On February 9, 2010, Plaintiff returned to see Dr. Gosy, reporting continued pain, with an increase in muscle spasms despite use of Valium. T.384. She followed up with Dr. Gosy on May 11, 2010 (T.388), and August 12, 2010 (T.428). Her complaints about the nature, location, and severity of her pain and muscle spasms were unchanged at these appointments. Dr. Gosy reinstituted Norco in

lieu of Lortab due to Plaintiff's concerns about a high Tylenol dosage.

## IV.  General Legal Principles

### A.    Standard of Review

Title 42 U.S.C., § 405(g) authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  When evaluating a denial of disability benefits, the reviewing court may reverse the decision only if the Commissioner committed legal error or if her factual findings are not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000) (citing 42 U.S.C. § 405(g)); see also Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998)). A district court's function thus is not to determine de novo whether a claimant is disabled. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted). However, a district must independently determine if the Commissioner applied the correct legal standards in determining that the claimant is not disabled. See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). "Failure to apply the correct legal standards is grounds for reversal." Id. Therefore, the reviewing court first evaluates the Commissioner's application of the pertinent legal standards, and then, if the standards were correctly applied, considers the substantiality of the evidence.

See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) (stating that "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

**B.   Eligibility for DIB**

In order to be entitled to DIB under Title II of the Act, a claimant must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. §§ 423(a)(1) (A), 423(c)(1). To establish disability for purposes of DIB, the claimant must demonstrate that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment, or combination of impairments, which has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(l)(A). A disabling physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The five-step sequential evaluation for adjudicating disability claims is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of proof at steps 1 through

-10-

4, at which point there is a limited burden-shift to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. <u>Curry v. Apfel</u>, 209 F.3d 117, 122-23 (2d Cir. 2000).

Evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired. See <u>Arnone v. Bowen</u>, 882 F.2d 34, 37–38 (2d Cir. 1989) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.' . . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits.") (citations omitted)).

## V.   The ALJ's Decision

At step one, the ALJ found that Plaintiff met the insured status requirements of Title II of the Act through December 31, 2013, and that she had not engaged in substantial gainful activity since March 18, 2009, the amended onset date. At step two, the ALJ determined that Plaintiff has one "severe" impairment, degenerative disc disease of the lumbar spine. However, the ALJ found that the clinical signs, symptoms and functional limitations resulting from

that severe impairment do not meet or equal any listed impairment, including Listing 1.04 (Disorders of the spine). T.12.

After analyzing Plaintiff's subjective statements regarding her symptoms and limitations and her medical history, the ALJ concluded that she has the residual functional capacity ("RFC") to perform the full range of light work. T.13. In particular, the ALJ noted that "the record suggests that [Plaintiff] wanted to look for other employment". He also found it significant that she never obtained a functional capacity evaluation, as recommended by Dr. Gosy. T.17. With regard to "the opinion evidence", the ALJ relied on what he referred to as the "objective diagnostic evidence" (without further specification) and the opinions of Drs. Reddy, Gosy, and Capicotto. However, the ALJ specifically rejected Dr. Gosy's RFC assessment that Plaintiff could perform what the ALJ characterized as sedentary work. T.17.

Finally, the ALJ found, Plaintiff could perform her past relevant work as a phlebotomist as it is normally performed in the national economy. T.17. The ALJ noted that although Plaintiff described some of her past duties as requiring medium or greater exertion, the Dictionary of Occupational Titles ("DOT") classifies the job of phlebotomist (079.364-022) as requiring light exertion. Because Plaintiff can perform the job of phlebotomist as normally performed in the national economy and as described in the DOT, the

ALJ found, she has not been under a disability from March 18, 2009, through the date of his decision.

## V.    Discussion

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to make a function-by-function analysis of the requirements of light work and misapplied the treating physician rule. Plaintiff next asserts that the ALJ erred in his assessment of her credibility and improperly discounted her subjective statements of pain. Lastly, Plaintiff contends, the ALJ incorrectly concluded that she was capable of her past relevant work as a phlebotomist.

### A.    Misapplication of the Treating Physician Rule

Plaintiff argues that the ALJ erroneously rejected the RFC assessment form completed by her treating neurologist and pain management specialist, Dr. Gosy. In that report, which was the only opinion evidence of Plaintiff's functional limitations by an acceptable medical source,[4] Dr. Gosy opined that she was capable of less than the full range of sedentary work. Specifically, Dr. Gosy stated that Plaintiff could perform the sitting and lifting demands of sedentary work, but she needed to have a sit/stand option, was

---

[4]

On July 30, 2009, a Single Decision Maker completed a Residual Functional Capacity form. T.363-68. Because a single decisionmaker "is not a medical professional[,] [ ] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion." Sears v. Astrue, 2:11-CV-138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012) (collecting cases); accord Box v. Colvin, No. 12-CV-1317 ADS, ___ F. Supp.2d ___, 2014 WL 997553, at *19 (E.D.N.Y. Mar. 14, 2014).

unable to stoop or bend, and occasionally would experience interference with her ability to attend and concentrate even simple tasks due to her pain. T.277-79. The ALJ explicitly rejected Dr. Gosy's RFC assessment.

The medical opinion of a claimant's treating physician or psychiatrist will be given "controlling" weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." Green-Younger, 335 F.3d at 107. The rationale for according well-supported treating physicians' opinions controlling weight is that they "[a]re likely to be [from] the medical professionals most able to provide a detailed [and] longitudinal picture of [the claimant's] medical impairment(s). . . ." 20 C.F.R. § 404.1527(d)(2).

A corollary to the treating physician rule is the so-called "good reasons rule," which provides that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion." Clark v. Commissioner of Social Sec., 143 F.3d

-14-

115, 118 (2d Cir. 1998) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Commissioner of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Commissioner of Social Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

Apart from stating that he did not find the "evidence as a whole" provided a basis for limiting Plaintiff "to sedentary work[,]"[5] the ALJ offered no reasons for his decision to reject Dr. Gosy's RFC assessment. This deficiency alone warrants remand. See, e.g., Sanders v. Commissioner of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012) (unpublished opn.) ("This Court has consistently held that the failure to provide good reasons for not crediting the

---

[5]
    Contrary to the ALJ's suggestion, Dr. Gosy's opinion does not state that Plaintiff can in fact perform the full-range of sedentary work.

opinion of a claimant's treating physician is a ground for remand.") (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998); <u>Halloran v. Barnhart</u>, 362 F.3d 28, 33 (2d Cir. 2004) (<u>per curiam</u>) ("[W]e will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.")); <u>Burgin v. Astrue</u>, 348 F. App'x 646, 648 (2d Cir. 2009) (remand required because ALJ had ignored treating physician's RFC assessment entirely) (unpublished opn.).

Although the ALJ may "choose between properly submitted medical opinions[,]" <u>McBrayer v. Secretary of Health & Human Servs.</u>, 712 F.2d 795, 799 (2d Cir. 1983), Dr. Gosy's RFC assessment was the only medical opinion evidence regarding Plaintiff's functional limitations. The ALJ could not, and did not, point to any opinion by another medical provider that conflicted with Dr. Gosy's RFC assessment. Instead, the ALJ stated that his assessment of Plaintiff's limitations was supported by the "objective diagnostic evidence[,]" T.17. The Second Circuit has made clear that, "as a lay person, the ALJ simply was not in a position to know whether" the objective medical data supported the treating physician's opinion. <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999) (citing <u>Wagner v. Secretary of Health and Human Servs.</u>, 906 F.2d 856, 861 (2d Cir. 1990)). The ALJ thus improperly substituted his own judgment for a competent medical opinion

-16-

offered by a treating source. Id. (citations omitted). This error also warrants remand. See Mendolia v. Astrue, No. 10-CV-0417 ENV, 2013 WL 3356060, at *7 (E.D.N.Y. July 3, 2013) ("In his written decision, the ALJ states that his 'most important[ ]' reason for rejecting Dr. Goldstein's opinion was that it was 'not supported by the clinical and diagnostical findings.' Yet the ALJ did not rely on a different physician's evaluation of the same (or any other) findings to reach this conclusion, but, instead, relied on his own review and analysis of the medical evidence.") (citing Bahama v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998)).

Contrary to Defendant's contention, the ALJ's error in failing to properly weigh Dr. Gosy's opinion is not harmless. For instance, Dr. Gosy opined that Plaintiff never could stoop (bend), squat, or twist. Both light and sedentary jobs require a claimant to bend or stoop occasionally. See SSR 83-14, 1983 WL 31254, at *4 (S.S.A. 1983) ("[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist."); SSR 96-9p, 1996 WL 374185, at *8 (S.S.A. July 2, 1996) ("A *complete* inability to stoop would significantly erode the unskilled sedentary occupation base and a finding that the individual is disabled would usually apply. . . .") (emphasis in

original). Thus, there is at least a reasonable probability that the ALJ's decision would have been different had he properly weighed Dr. Gosy's treating source opinion.

**B.   Failure to Perform Function-By-Function Assessment**

Plaintiff argues that the ALJ failed to meaningfully evaluate the limitations caused by her severe impairment against the functional requirements of light work.

In assessing a claimant's RFC, "the ALJ must 'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light. . . .'" Hilsdorf v. Commissioner of Soc. Sec., 724 F. Supp.2d 330, 348 (E.D.N.Y. 2010) (quoting SSR 96-8p, 1996 WL 374184, at *1). This analysis requires assessing a claimant's ability "to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately[.]" Id. (quoting SSR 96-8p, 1996 WL 374184, at *5); see also 20 C.F.R. §§ 404.1521(b)(1)-(5), 416.945(b).

Here, the ALJ failed to make such a function-by-function finding. Although he mentioned the lifting requirements of light work, and acknowledged that a job is in the light category when it requires a good deal of walking and standing, the ALJ did not discuss Plaintiff's documented limitations in these exertional

areas. Instead of separately considering Plaintiff's capabilities vis-a-vis the relevant work-related strength demands, the ALJ stated in a conclusory fashion that there was "nothing in the medical record to suggest that the claimant is unable to perform light exertion." T.16. As noted above, the ALJ failed to evaluate the effect of Plaintiff's limitations in bending and stooping on the light and sedentary employment bases in general, and on her ability to perform the job of phlebotomist in particular. It bears noting that Plaintiff informed her medical provider that her job as a phlebotomist required nearly constant bending, which caused her to experience pain. In addition, Dr. Gosy opined that, due to her impairment, Plaintiff "never" could stoop (bend), squat, or twist. As noted above, both light and sedentary jobs require at least occasional stooping (bending at the waist). See SSR 96-9p, 1996 WL 374185, at *8; SSR 83-14, 1983 WL 31254, at *4. According to the United States Department of Labor, the job of phlebotomist requires "occasional" stooping. See U.S. DEPT. OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE DICTIONARY OF OCCUPATIONAL TITLES, Pt. A, 02.04, p. 28 (1993).

Because a failure to separately assess a claimant's capacity to perform the relevant strength demands can "result in the adjudicator overlooking some of an individual's limitations or restrictions [,]" which can in turn "lead to an incorrect use of an exertional category . . . and an erroneous finding that the

individual is not disabled," SSR 96-8p, 1996 WL 374184, at *4, this error is a further basis for remand. See, e.g., McClaney v. Astrue, No. 10-CV-5421(JG)(JO), 2012 WL 3777413, at *11 (E.D.N.Y. Aug. 10, 2012).

## C. Erroneous Credibility Assessment

Plaintiff argues that the ALJ committed multiple legal errors in arriving at his assessment of her credibility.

The ALJ here found that although Plaintiff has medically determinable impairments that reasonably could be expected to produce her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her limitations are "not credible to the extent they are inconsistent with the above residual functional capacity assessment." T.16. The Court has found no support in the regulations or the caselaw from this Circuit supporting the propriety of basing a credibility determination solely upon whether the ALJ deems the claimant's allegations to be congruent with the ALJ's own RFC finding. See, e.g., Smollins v. Astrue, No. 11-CV-424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011) ("[The ALJ's] analysis of Smollins's credibility is flawed not only in its brevity, but in its acceptance as a foregone conclusion of Smollins's capacity to perform sedentary work. Instead of comparing Smollins's symptoms, as described by Smollins herself and her doctors, to the objective medical and other evidence of record as required by the Social Security regulations,

[the ALJ] merely compared Smollins's statements regarding her symptoms to his own RFC assessment."); Mantovani v. Astrue, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011) (similar). Indeed, the Seventh Circuit has specifically rejected the boilerplate language used by the ALJ in Plaintiff's case, noting that it "implies that ability to work is determined first and is then used to determine the claimant's credibility." Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Secretary of Health and Human Servs., 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted). Moreover, the ALJ's factual recitation in the credibility assessment must be accurate. See, e.g., Horan v. Astrue, 350 F. App'x 483, 484-85 (2d Cir. 2009) (unpublished opn.) ("The ALJ's adverse credibility determination was based in part on testimony that Horan did not give and an inconsistency that did not exist. . . . Because the ALJ's credibility determination was based largely on these factual errors, we cannot say that it is supported by substantial evidence.") (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir.

1996)). In rejecting Plaintiff's testimony regarding her disabling back complaints, the ALJ stated that records from December 2009, from Lifetime Health, "did not include a lumbar impairment under a list of 'chronic problems' and the claimant did not even mention low back pain." T.16 (citing, generally, Ex. 12F (records from Lifetime Health, 10/21/09 to 12/22/09). First, it is misleading to discount Plaintiff's complaints of lower back pain by focusing on a single medical record, completed by Plaintiff's general practitioner when she was being seen in follow-up for an unrelated medical issue (hypertension), and disregard the numerous other notes from her specialist documenting her consistent complaints of intractable back pain. Second, this statement is factually inaccurate because a lower back complaint, "[l]umbago", *is* listed under "chronic problems". T.375. A simple reference search would have revealed that lumbago is a term, albeit antiquated, to refer to "pain in the lower (lumbar) portion of the back."[6]

Moreover, a claimant, such as Plaintiff, "with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983); accord Horan, 350 F. App'x at 485 (citation omitted). Here, Plaintiff attempted to continue working even as her low back pain progressively worsened. However, the ALJ

---

[6]

*Lumbago Definition*, BRITTANICA.COM, http://www.britanica.com/EBchecked/topic/351155/lumbago (last visited Aug. 6, 2014).

held her desire to work against her, finding that it undermined her subjective complaints.

The factual errors in the ALJ's credibility determination, along with the legal error in failing to give favorable consideration to Plaintiff's work history, are additional bases for remand. See Horan, 350 F. App'x at 485 (ordering remand to the Commissioner "[b]ecause the ALJ committed legal error in failing to consider Horan's work history, and because the ALJ's credibility determination was based on a number of factual errors").

**D.    Remedy**

Based upon the foregoing legal and factual errors, the Court finds that the Commissioner's decision must be reversed and the case remanded pursuant to section four of 42 U.S.C. § 405(g), for further administrative proceedings, including the re-evaluation of Dr. Gosy's RFC assessment. The Court notes that Plaintiff has indicated that Dr. Gosy did not have her most recent MRI at the time of the RFC assessment. Therefore, a copy of the most recent MRI should be provided to Dr. Gosy, and he should complete a new RFC assessment form, paying particular attention to side effects of Plaintiff's pain medications on her functional limitations, as well as considering the errors outlined in this Decision and Order. The Court directs that a copy of this Decision and Order be mailed directly to Dr. Gosy. In addition, the ALJ will re-evaluate Plaintiff's subjective complaints using the proper legal framework.

Based on the re-evaluation of Dr. Gosy's RFC assessment and Plaintiff's subjective complaints, the ALJ will reassess Plaintiff's RFC, including a function-by-function analysis of her ability to perform work-related activities. If the ALJ determines that Plaintiff is capable of some type of substantial gainful employment but has nonexertional limitations, the ALJ should obtain evidence from a vocational expert or similar source if needed.

## V.   Conclusion

Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    August 8, 2014
          Rochester, New York